Filed 3/13/25  In re Tillman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ANDREW TILLMAN<br><br>on Habeas Corpus. | E084719<br><br>(Super.Ct.No. RIF72212)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  Sean Crandell, Judge.  Petition denied.

Jason L. Jones, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazara and Steve Oetting, Deputy Attorneys General, for Respondent.

In 1996, defendant and petitioner Andrew Tillman was the driver of the vehicle in which the front seat passenger shot at the victims, killing one.  In 1999, a jury convicted defendant of first degree murder (as an aider and abettor) and found he was a principal

armed with a firearm and, as a principal and an aider and abettor, he discharged a firearm from a motor vehicle with the intent to inflict death. (Pen. Code, §§ 187, subd. (a), 12022, subd. (a)(1), 190.2, subd. (a)(21), unlabeled statutory references are to the Penal Code.) This court affirmed his conviction on direct appeal.

Subsequently, defendant filed multiple petitions for writ of habeas corpus as well as a petition for resentencing. In 2023, after we denied his last petition (case No. E081672), defendant petitioned the California Supreme Court, arguing he received constitutionally ineffective assistance of appellate counsel who failed to challenge his conviction on the grounds of instructional error. The Supreme Court ordered the Secretary of the Department of Corrections and Rehabilitation to show cause in this court why defendant "is not entitled to relief based on his claim that trial and appellate counsel rendered ineffective assistance by failing to argue that the jury instructions erroneously allowed the jury to find the drive-by shooting special circumstance true based either on an intent to kill or a reckless disregard for human life." (*In re Andrew Tillman on Habeas Corpus*, Sept. 25, 2024, S282048.)

The Attorney General concedes the alternative theory in the instruction that allowed a true finding based on aiding and abetting with reckless disregard for human life was incorrect, but argues the petition should be denied because it is procedurally barred, and the jury's express finding of intent to kill shows its conclusion was not based on the theory of reckless disregard for human life. Assuming the petition is not procedurally

2

barred, we conclude defendant is not entitled to relief because the jury found he acted with the intent to inflict death within the meaning of section 190.2, subdivision (a)(21).

## I. PROCEDURAL BACKGROUND AND FACTS[1]

Prior to December 12, 1996, members of a Hispanic gang named the Elsinore Young Classic (EYC) shot at defendant's house, causing a feud between EYC, on the one side, and defendant and his friends, on the other. (*Carter*, *supra*, E025621.) On December 12, defendant threw a going-away party for a friend at his grandfather's house. (*Ibid.*) Daniel Carter, Rene Canales, Julius Cheek, and Gabriel Adame were in attendance, and one brought a rifle to the party. (*Ibid.*) During the party, they discussed EYC and appeared upset. (*Ibid.*)

Later, defendant and his friends left in a car to buy alcohol, though one participant said they left because they had seen some "Latinos." (*Carter*, *supra*, E025621.) Defendant was driving, and Carter sat in the front passenger seat. (*Ibid.*) At the intersection near a Texaco station where the murder occurred, they encountered three people, Frances Rios, Vickie Sanchez, and Alonzo Escobar (the victims). (*Ibid.*) Carter challenged the victims as to whether they were with EYC. (*Ibid.*) One of the women told him to leave them alone. (*Ibid.*) Defendant turned into the Texaco station while

---

[1] We follow both parties' lead and take our factual summary from our prior opinion from the direct appeal of the judgment (*People v. Carter, et al.* (Sep. 8, 2000, E025621) [nonpub. opn.] (*Carter*)) that is included in the exhibits to defendant's petition. (Cal. Rules of Court, rule 8.1115(b)(1).)

We incorporate the record in case No. E078605 into the record in this case. (Cal. Rules of Court, rule 8.147(b)(1).)

Carter aimed a rifle at the victims and said to them, "What are you going to do now?" (*Ibid.*) Carter then shot and killed Sanchez; reloaded the rifle, and fired a second shot that grazed Rios's hair. (*Ibid.*) Defendant and his friends returned to his grandfather's house while Carter bragged about the shooting. (*Ibid.*)

On December 9, 1997, the district attorney filed an information charging defendant and Carter with one count of murder. (§ 187.) The information also alleged Carter personally used a firearm (§ 12022.5, subd. (a)), defendant was armed with a firearm (§ 12022, subd. (a)(1)), and the murder was perpetrated by means of discharging a firearm from a motor vehicle (§ 190.2, subd. (a)(21)). On May 13, 1999, the jury found defendant guilty of first degree murder and found all allegations and the special circumstance to be true, and the trial court sentenced him to an indeterminate term of one year plus life without parole. Defendant's judgment was affirmed on direct appeal. (*Carter*, *supra*, E025621.) We concluded, inter alia, "[t]he evidence is sufficient to support a reasonable finding that Tillman knew that Carter had a gun, and that, when Carter initially confronted the three individuals on the street, Tillman intentionally assisted Carter in fatally shooting Sanchez by driving the car into the gas station near the victims; stopping the car while Carter fired; and then speeding away afterwards." (*Ibid.*)

Subsequently, defendant filed unsuccessful habeas petitions in this court in 2002 (case No. E031304) and 2008 (case No. E046331), and unsuccessfully petitioned the California Supreme Court in 2002 (case No. S107237) and in 2010 (case No. S186027). In October 2013, defendant filed a petition in propria persona for habeas corpus in this

4

court (case No. E059727) arguing ineffective assistance of counsel relating to instructional error regarding voluntary intoxication and accomplice liability. We summarily denied it, and his petition to the California Supreme Court (case No. S214638) was also denied based on *In re Robbins* (1998) 18 Cal.4th 770, 780 and *In re Clark* (1993) 5 Cal.4th 750, 797-798.

In 2015, after having first petitioned the superior court (Superior Court of Riverside County case No. RIC5105117), defendant filed a habeas corpus petition in this court (case No. E064140) asserting instructional error under *People v. Chiu* (2014) 59 Cal.4th 155, 167 [aider and abettor may not be found guilty of first degree premeditated murder based on the natural and probable consequences doctrine; instead, aider and abettor liability for that crime must be based on direct aiding and abetting principles]. We summarily denied the petition on January 5, 2016, and on August 17, 2016, the California Supreme Court summarily denied defendant's petition for writ of habeas corpus based on the same issue (case No. S232085).

On September 1, 2020, defendant filed a petition for writ of habeas corpus in this court (case No. E075619) challenging the special-circumstance finding on the grounds of insufficient evidence he was a major participant in the crime and he acted in reckless disregard for human life. We denied the petition, reasoning defendant's special-circumstances enhancement was based on section 190.2, subdivision (a)(21), which requires a finding of intent to kill; thus, the question of whether defendant was a major participant who acted with reckless disregard for human life was irrelevant, and the cases

5

of *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 do not apply.

On September 24, 2021, defendant filed a petition for resentencing in the superior court under former section 1170.95. The court denied the petition on the grounds it failed to state a prima facie case. The court reasoned the special-circumstance jury instruction "specifically require and instructed the jury that in order to find . . . that allegation true, they must have found that the defendant had specific intent to kill[;] . . . the verdict forms they returned . . . specifically stated that they found the defendant had the intent to kill[;] and . . . the appellate court did make findings that related to these issues[, finding] . . . the jury returned the verdict based on an intentional intent to kill on behalf of [d]efendant." We affirmed the court's denial of the resentencing petition, stating, "The jury's true finding under section 190.2, subdivision (a)(21), that defendant 'did, as a principal, and aider and abettor, intentionally discharge a firearm from a motor vehicle with the intent to inflict death' necessarily means the jury found defendant acted with the intent to kill." (*People v. Tillman* (May 3, 2023, E078605) [nonpub. opn.].)

Defendant filed another petition for habeas corpus on July 10, 2023, which we summarily denied on September 1, 2023. (Case No. E081672.) He then petitioned the Supreme Court (case No. S282048), which issued an order to show cause, returnable to this court, regarding why defendant is not entitled to relief on his claim trial and appellate counsel rendered ineffective assistance by failing to argue the jury instructions erroneously allowed the jury to find the drive-by shooting special circumstance true.

6

## II.  DISCUSSION

Defendant faults his counsel for failing to challenge CALJIC No. 8.80.1 on the grounds the instruction presented an invalid legal theory and lessened the prosecution's burden of proof by incorrectly permitting the jury to make a true finding on the special-circumstance allegation (§ 190.2, subd. (a)(21) based on a mens rea of reckless indifference where the law requires a finding of intent to kill.  The Attorney General acknowledges the instructional error, but contends defendant's petition is procedurally barred because it is untimely and successive, and his counsel had a reasonable tactical ground for not advancing the meritless claim given the jury's express finding of intent to kill.  We will assume the petition is not procedurally barred and consider the merits of the issue.

### A.  *Further Background Information.*

The information charged defendant with murder, alleged his codefendant personally used a firearm, and the intentional killing was perpetrated by means of discharging a firearm from a motor vehicle, within the meaning of section 190.2, subdivision (a)(21).[2]  The trial court instructed the jury that a principal in a crime

---

[2]  The information, in relevant part, provides: "The District Attorney of the County of Riverside hereby accuses DANIEL CARTER and ANDREW TILLMAN of a violation of section 187 of the Penal Code, a felony, in that on or about December 12, 1996, in the County of Riverside, State of California, they did willfully, unlawfully, and with malice aforethought murder VICKIE ANN SANCHEZ, a human being.  [¶] . . . [¶] The District Attorney of the County of Riverside further charges that the murder of VICKIE ANN SANCHEZ was committed by the defendants, DANIEL CARTER and ANDREW TILLMAN, and that the intentional killing of the victim was perpetrated by means of discharging a firearm from a motor vehicle, within the meaning of Penal Code section 190.2(a)(21)."

includes both a person "who directly and actively commit[s] the act constituting the crime" and a person "who aid[s] and abet[s] the commission of the crime." (See CALJIC No. 3.00.) Jurors were told "[a] person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) by act or advice aids, promotes, encourages or instigates the commission of the crime." (See CALJIC No. 3.01.)

The trial court went on to explain the doctrine of natural and probable consequences, as it was understood at the time: "One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted." (See CALJIC No. 3.02.) The elements were (1) commission of the target crime, here murder; (2) "the defendant aided and abetted that crime"; (3) "a co-principal in that crime committed the crime of shooting from a vehicle"; and (4) "[t]he crime of murder was a natural and probable consequence of the commission of the crime of shooting from a vehicle." (*Ibid*.) The court instructed the jury on the elements of murder (CALJIC No. 8.10),[3] the definition of malice (CALJIC

---

[3] "Every person who unlawfully kills a human being with malice aforethought, is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The killing was done with malice aforethought."

8

No. 8.11),[4] murder perpetrated by means of discharging a firearm form a motor vehicle (CALJIC No. 8.25.1),[5] and the requirements for a true finding on the allegation a principal was armed with a firearm (CALJIC No. 17.15).

Regarding the special-circumstance allegation under section 190.2, subdivision (a)(21),[6] the trial court instructed the jury in relevant part as follows: "The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor,

[4] "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."

[5] "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree."

[6] Section 190.2, subdivision (a)(21), provides: "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." Subdivision (c) clarifies how the special circumstance applies to non-killers: "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4." As the Attorney General notes, "[a]t the time of [defendant's] trial, as now, section 190.2, subdivision (a)(21), required the prosecution to show that the defendant acted with the intent to kill. (See Stats. 1995, c. 478 (S.B.9), § 2 (Prop. 196, approved March 26, 1996, eff. March 27, 1996).)"

you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant *with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree*, **or** *with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of first degree murder* which resulted in the death of a human being, namely Vicky Sanchez." (See CALJIC No. 8.80.1., italics added.) The jury also received CALJIC No. 8.81.21 which, in relevant part, provides: "To find that the special circumstance, referred to in these instructions as murder by means of an intentional discharge of a firearm from a motor vehicle, is true, it must be proved: [¶] 1. The murder was perpetrated by means of discharging a firearm from a motor vehicle; [¶] 2. The perpetrator intentionally discharged the firearm at another person or persons outside the vehicle; and [¶] 3. The perpetrator, at the time he discharged the firearm, intended to inflict death." The court did not instruct on the felony-murder rule.

Consistent with the jury instructions, the trial prosecutor emphasized the case involved a drive-by shooting. After discussing the elements of murder and the requirements for the jury to find the perpetrators acted with malice, he argued defendant was liable as a principal who aided and abetted the killing, and because he was necessary as the driver of the car. The prosecutor then stated, "if you do conclude . . . that drive-by murder in the first degree applies, and you all vote guilty that . . . [defendant is] guilty of first-degree murder based upon the drive-by shooting then you go to the special circumstance." He explained the special circumstance allegation under section 190.2,

10

subdivision (a)(21): "It must be proved that the murder was perpetrated by means of discharging a firearm from a motor vehicle; two, that the perpetrator intentionally discharged the firearm at another person or persons outside the vehicle, and; three, the perpetrator at the time he, in this case, discharged the firearm, intended to inflict death. [¶] . . . [¶] It also applies to [defendant] when you apply the aider and abetter statute. If [defendant] had the same intent as [codefendant], then [defendant] is just as guilty as [codefendant]."

In response, defense counsel argued, "There really is no solid, no concrete, no reliable evidence of proof beyond a reasonable doubt that [defendant] knew that [codefendant] was going to shoot Ms. Sanchez, and that [defendant] knew that [codefendant] was going to kill Ms. Sanchez." Counsel noted that witnesses' descriptions of defendant after the shooting as being "in a state of shock," "sad," "upset," and "not himself," are sufficient to create reasonable doubt. He claimed the "essence of the government's case" is defendant is guilty because he is the driver. Defense counsel added that witness testimony—just before the shooting, defendant was going to leave and continue on with the original plan of going to purchase alcohol—shows defendant "didn't know that [the shooting] was going to happen." Thus, counsel maintained defendant "is not guilty of murder. There is all kinds of reasonable doubt about that. But you could reasonably find that he is an accessory after the fact to murder."

In rebuttal, the prosecutor argued defendant's actions fail to support an assertion of ignorance. Counsel pointed out that defendant initially left the party to purchase

11

alcohol, but returned shortly thereafter, picked up other friends, drove in a pattern that was not a direct route to a liquor store, pulled into the gas station, and stopped. At the gas station, codefendant pulled out the rifle, fired the first round, then fired a second round, before defendant sped off. The prosecutor asserted that under those circumstances, it is reasonable defendant "knew, and they all knew, that that rifle was in the car. [Codefendant] pulled out the rifle. And between the time that [defendant] saw [codefendant] with the rifle, a few seconds went by. Five seconds; that's a long time under those circumstances. And then the first shot. High-powered 30.06 rifle. Boom. Bolt-action rifle. [¶] The seconds tick away as [defendant] drives away. No. Does he stay right there? Yes, so that [codefendant] can fire another round at the strangers in the street. After the second round was fired, they drive away." In closing, the prosecutor maintained, "[T]he overwhelming amount of evidence shows that [codefendant] was in the passenger seat, that he fired that rifle out the window, that [defendant] was the driver. Guilty of drive-by murder in the first degree, and they're guilty of the special circumstances."

The jury returned verdicts against defendant, finding him guilty of first degree murder and finding all allegations and the special circumstance to be true.[7]

---

[7] "We, the jury in the above-entitled action, find true the special circumstance alleged under count I of the information, to wit: that the defendant, ANDREW TILLMAN did, as a principal, and aider and abettor, intentionally discharge a firearm from a motor vehicle with the intent to inflict death, within the meaning of Penal Code section 190.21(a)(21)."

*B. Standard of Review.*

"Where a jury is instructed on alternate theories of liability, one legally valid and one legally invalid, a federal constitutional error has occurred. The defendant has been deprived of his or her right to 'a jury properly instructed in the relevant law.' [Citations.] The error therefore requires reversal unless we determine the error was harmless beyond a reasonable doubt." (*In re Lopez* (2023) 14 Cal.5th 562, 580 (*Lopez*); see *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) "Providing the jury with both a valid and an invalid theory should not be subject to a higher standard of review than applies when the court provides the jury only with an invalid theory." (*People v. Aledamat* (2019) 8 Cal.5th 1, 11-12 (*Aledamat*).) An alternative-theory error is harmless beyond a reasonable doubt where "'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.'" (*Id.* at p. 8.) "The proper analysis under *Aledamat* does not rest on '"the likelihood that the jurors would have applied the erroneous instruction,"' but whether the jury could have found what it did find without also making the findings necessary for a valid theory." (*Lopez*, at p. 589.)

*C. Analysis.*

Defendant faults the instructions for allowing jurors (1) to convict him of first degree murder based on Carter's mental state alone, and (2) to make a true finding on the special circumstance as to Tillman so long as they found Carter intentionally discharged the firearm with an intent to inflict death and Tillman acted with reckless indifference

13

when aiding and abetting first degree murder.  He argues CALJIC No. 8.80.1 "should have required the prosecutor prove [defendant] personally harbored an intent to kill when he aided and abetted Carter."  The Attorney General concedes "the apparent instructional error," but asserts it was harmless beyond a reasonable doubt.  (*Chapman*, *supra*, 386 U.S. at p. 24 [Attorney General bears the burden of showing the error was harmless beyond a reasonable doubt.].)  To that end, he contends the jury's verdicts, combined with the information and the prosecutor's closing argument, leave no reasonable doubt a rational jury would have convicted defendant of first degree murder and made a true finding on the special circumstance based on the valid theory of his intent to kill if it had been properly instructed.  We agree with the Attorney General.

"Harmlessness can be shown '"if the jury verdict on other points effectively embraces"' the valid theory, '"or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding"' the facts underlying the valid theory as well." (*In re Ferrell* (2023) 14 Cal.5th 593, 602.)  "In other words, if '"[n]o reasonable jury that made all of these findings could have failed to find"' the facts necessary to support a valid theory, the alternative-theory error was harmless.  [Citation.]  Indications that the jury considered an invalid theory, without more, do not undermine that conclusion[,]" (*Lopez*, *supra*, 14 Cal.5th at p. 592) nor does the prosecutor's "mere reliance on an invalid theory" in argument.  (*Id*. at p. 590.)

We consider whether a reasonable jury that made all of the findings in this case could have failed to find the facts necessary to support the valid alternative theory in the

14

special-circumstance allegation.  (*Lopez, supra*, 14 Cal.5th at 591 ["a reviewing court essentially asks whether any rational juror who made the findings reflected in the verdict and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict the defendant on a valid theory"].)  That valid theory required the jury to find defendant, as a principal, and aider and abettor, intentionally discharged a firearm from a motor vehicle with the intent to inflict death.  We conclude a reasonable jury could not have failed to make such finding.

Beginning with the information, the prosecution alleged the special circumstance was based on the "intentional killing of the victim," which was "perpetrated by means of discharging a firearm from a motor vehicle."  There was no reference to reckless disregard for life.  At trial, the evidence showed defendant was an active participant in the drive-by shooting.  After leaving the party for a few minutes, he briefly returned, picked up additional people (including codefendant Carter who brought the rifle and sat in the front passenger seat), and left a second time to drive around the streets (not in a direct path to any liquor store he allegedly was going to) until they located an individual who they believed to be a member of EYC.  Defendant then pulled the car into a gas station and positioned it to enable each shooting to take place.  He waited for Carter to fire two separate shots, then sped off without rendering aid to the victims.  This evidence, albeit circumstantial, virtually compelled a finding that defendant knew Carter intended to shoot the victims and that he shared the intent to kill them.  (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 593-596, 606, review dism. May 31, 2023, S274792 [finding error in

15

instructing on legally unsound theory of liability was harmless beyond a reasonable doubt where "evidence of the valid theory was overwhelming"]; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054; see *People v. White* (2014) 230 Cal.App.4th 305, 319 [in determining the state of mind of the aider and abettor, the "existence of the requisite knowledge may be established by circumstantial evidence"].)

The jury was then instructed on the elements of murder, elements of murder perpetrated by means of discharging a firearm from a motor vehicle with the intent to inflict death, principals and aiders and abettors, and the natural and probable consequences doctrine. And jurors received CALJIC No. 8.80.1, which defined the special-circumstance allegation under section 190.2, subdivision (a)(2). In closing, the prosecutor only argued for drive-by murder in the first degree.[8] (*People v. Glukhoy*, *supra*, 77 Cal.App.5th at p. 605 [prosecutor's closing argument is also "a pertinent circumstance that should be considered in determining whether an error is harmless"].) Regarding the special circumstance, the prosecutor argued, "Now, if you do conclude . . . that drive-by murder in the first degree applies, and you all vote guilty that . . . Carter and [defendant] are both guilty of first-degree murder based upon the drive-by shooting then

---

[8] "There are several theories that you'll probably hear about. You're only going to hear one from me; theories as to first-degree murder. If one of them fits, that's it. [¶] . . . And if you decide that there's a drive-by murder in the first degree, all of you unanimously then go to the special allegation." After arguing codefendant Carter fired the rifle at the victims with the intent to kill, the prosecutor then discussed defendant, the driver who did not do the shooting, but lied to the police on multiple occasions to protect himself and others. "You have [defendant] who is a necessary—not just an aider and abettor, he's absolutely necessary to this crime. You . . . couldn't have this killing unless you had someone driving the car. [¶] In this case, it's [defendant]. . . . [A]t the same time he has to have the same knowledge and unlawful purpose of the perpetrator."

16

you go to the special circumstance[,]" which "applies to [defendant] when you apply the aider and abettor statute. If [defendant] had the same intent as . . . Carter, then [defendant] is just as guilty as . . . Carter." Defense counsel countered by arguing that (1) the evidence failed to prove beyond a reasonable doubt that defendant knew Carter was going to shoot and kill the victim, (2) the prosecution's case was simply defendant was guilty because he was the driver, and (3) defendant left the party to purchase more alcohol.

The jury rejected defense counsel's arguments, rejected the argument that defendant was not a principal armed with a firearm, rejected the lesser offenses of voluntary manslaughter and accessory after the fact of murder, and convicted defendant of murder in the first degree as charged in the information. It found that defendant was a principal armed with a firearm and, as a principal, and aider and abettor, he "intentionally" discharged a firearm from a motor vehicle with the intent to inflict death. Thus, the verdicts demonstrate that the jury necessarily credited the evidence that established defendant's culpability for the drive-by shooting of the victims with the intent to kill them. (See *People v. Glukhoy*, *supra*, 77 Cal.App.5th at p. 606.)

For the above reasons, we conclude no rational juror who made the findings reflected in the verdicts and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict defendant on the valid theory. (*Aledamat*, *supra*, 8 Cal.5th at p. 15.)

## III.  DISPOSITION

Defendant's petition for writ of habeas corpus is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER

J.


We concur:


RAMIREZ

P. J.


CODRINGTON

J.